# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 15-00359-01-CR-W-DGK |
| JAVIER PULIDO-AYALA, | ) |
| Defendant. | ) |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Pending before the Court are Defendant Javier Pulido-Ayala's ("Pulido-Ayala") Motion to Suppress (Doc. 25), the Government's opposition (Doc. 29), United States Magistrate Judge Robert E. Larsen's Report and Recommendation (Doc. 49), and Pulido-Ayala's objections (Doc. 52). After carefully reviewing Judge Larsen's report and conducting an independent review of the applicable law and record, *see* L.R. 74.1(a)(2), the Court ADOPTS the report and DENIES Pulido-Ayala's motion.

Having reviewed the transcript from the suppression hearing (Doc. 41) and the admitted exhibits, the Court finds as follows. Law enforcement pulled over Pulido-Ayala and his passenger for failing to use a turn signal and failing to stop at a stop sign. Suspecting that Pulido-Ayala was ferrying drugs, the officers summoned a drug-sniffing dog to smell the vehicle's exterior.

The car's passenger said he wanted to leave the car while the narcotics sniff occurred, so Officer Brian Sanders ("Officer Sanders") opened the door for the passenger. No one shut the door after the passenger exited. No officer asked Pulido-Ayala or his passenger to shut the door, and no officer intended to leave the door open.

Sergeant R. Brooks McGinnis ("Sergeant McGinnis") arrived with his trained narcotics detection dog, Jampy. Though leashed, Jampy immediately jumped through the open passenger door and alerted at the fender area. Sergeant McGinnis did not direct Jampy into the open car door. He pulled Jampy back and attempted to walk around the vehicle. Jampy returned to the door, tried to jump inside, and alerted. The officers searched the car and found three kilograms of cocaine in a false compartment.

Pulido-Ayala now moves to suppress the cocaine, which Judge Larsen recommended denying. Pulido-Ayala's strongest argument is that Jampy, by jumping into and sniffing the car's interior, could not have provided probable cause for the officers to search Pulido-Ayala's car without a warrant.

Law enforcement may search a vehicle without a warrant only if they have probable cause, meaning a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Bowman*, 660 F.3d 338, 345 (8th Cir. 2011). If a drug-sniffing dog alerts to a car's exterior, then the police have probable cause to search the vehicle for drugs. *Id.*; *United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005).

If a drug-sniffing dog jumps into the car's *interior* and alerts, then probable cause exists only if: (1) the dog entered the car on its own instinct; and (2) an officer did not open the vehicle for the purpose of permitting an interior dog sniff. *United States v. Lyons*, 486 F.3d 367, 373–74 (8th Cir. 2007) ("Absent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment.").

The officers here satisfied that test. First, Jampy jumped through the open car door on his own initiative. Sergeant McGinnis led Jampy around the vehicle's exterior on his leash and did not direct him to enter the open door. Notwithstanding, Jampy dove into the car and alerted.

2
Case 4:15-cr-00359-DGK   Document 53   Filed 07/13/16   Page 2 of 4

Sergeant McGinnis tried to pull Jampy away from the open door and have him sniff the exterior, but Jampy resisted, returned to the car, and alerted again. Therefore, Jampy entered Pulido-Ayala's car on his own accord. *See id.* at 373; *see also United States v. Guidry*, 817 F.3d 997, 1006 (7th Cir. 2016); *United States v. Sharp*, 689 F.3d 616, 620 (6th Cir. 2012).

Second, although Officer Sanders, not Pulido-Ayala, opened the passenger door and touched it last, he did not intentionally leave it open for any particular reason. Nor did Sergeant McGinnis fail to close the door for any particular reason. Rather, when Sergeant McGinnis came around with Jampy, he "took the situation as [he] found it." *Lyons*, 486 F.3d at 373. Therefore, the officers did not leave open the vehicle door in order to facilitate Jampy's leap inside. *See id.*

Pulido-Ayala argues that interior drug-dog sniffs violate the Fourth Amendment per se if an officer—as opposed to the suspect—was the one who left open the door that the dog entered. Pulido-Ayala argues that because Officer Sanders opened the door, he or Sergeant McGinnis were responsible for closing it and are thus to blame for Jampy's intrusion.

Because the officers' intent is dispositive of the second *Lyons* prong, Pulido-Ayala's strict liability rule cannot stand. *Lyons* focused exclusively on whether the officer subjectively intended to encourage an interior sniff. *Id.* at 373 (prohibiting an officer only from "open[ing] a vehicle to create the opportunity for a drug dog to go where the officer himself cannot go" (internal quotation marks and alterations omitted)). Because the second prong begins and ends with the officers' intent, the mere fact that an officer touched the door last is irrelevant. If the officer meddles with part of the vehicle, thereby facilitating an interior sniff, he may use any resulting dog alert as probable cause so long as the facilitation was inadvertent. *See id.*

Nor must an officer close an open door or window in every case. No authority imposes on an officer "the affirmative duty to close the windows in preparation for the dog sniff," absent

3

intent to facilitate.  *Id.*  Although the car window in *Lyons* was left open by the *suspect*, the Court sees no reason why *Lyons*'s logic should not be extended to officer-opened doors or windows.

Pulido-Ayala counters with a Tenth Circuit decision affirming suppression where a border patrol agent left open a stopped van's door, through which a drug-sniffing dog later jumped and alerted to marijuana.  *United States v. Winningham*, 140 F.3d 1328, 1329–31 (10th Cir. 1998).  *Winningham* does not bind this Court, but in any event is distinguishable.  The agent there did not just leave the van's door open; he opened the door to search for smuggled aliens before quickly pivoting to a drug search, left the door open for over six minutes, unleashed the dog as it neared the door, and allowed the dog to remain in the van after jumping in.  Those indicia of intentional facilitation are absent here.  Officer Sanders's sole intent in opening the door was to help Pulido-Ayala's passenger exit, and no officer had any intent with regard to leaving the door open.

The Court rejects Pulido-Ayala's "touched it last" distinction.  The officers bore no responsibility for closing the car door before Jampy's sniff search.

Because Jampy entered Pulido-Ayala's car on his own instinct through a door which had not been opened by law enforcement for the purpose of permitting an interior drug-dog sniff, Jampy's interior alert provided probable cause for the officers to search the car.  The Court rejects the other objections Pudilo-Ayala raises.  Therefore, the Court cannot suppress the cocaine found inside.  The Court ADOPTS Judge Larsen's Report and Recommendation (Doc. 49) and DENIES Pulido-Ayala's Motion to Suppress Evidence (Doc. 25).

**IT IS SO ORDERED.**

Date:  July 13, 2016                  /s/ Greg Kays
                                                          GREG KAYS, CHIEF JUDGE
                                                          UNITED STATES DISTRICT COURT